**Raymond WRIGHT, Petitioner–Appellee,**

v.

**William DALLMAN, Warden, Respondent–Appellant.**

No. 92–3771.

United States Court of Appeals, Sixth Circuit.

Appellant Brief Submitted May 5, 1993.

Decided July 20, 1993.

Raymond Wright, pro se.

Stuart A. Cole, Asst. Atty. Gen., Office of Atty. Gen. of Ohio, Columbus, OH (briefed), for respondent-appellant.

Before: MILBURN, RYAN, and NORRIS, Circuit Judges.

RYAN, Circuit Judge.

Warden William Dallman appeals from the district court's grant of a conditional writ of habeas corpus ordering that inmate Raymond Wright be retried within 90 days on state charges of rape and felonious penetration or discharged from custody on those charges. Dallman challenges the district court's finding that in limiting Wright's cross-examination of witness Charles Render, the state trial court denied Wright his Sixth Amendment right to confront witness Render.

We shall reverse.

## I.

Wright is an inmate at the Lebanon Correctional Institution in Lebanon, Ohio. He brought a petition for a writ of habeas corpus, under 28 U.S.C. § 2254, in district court, challenging his state conviction on three counts of rape, one count of felonious sexual penetration, and one count of gross sexual imposition.

## A.

While serving a sentence for aggravated murder and robbery, Wright was indicted by an Ohio grand jury on charges arising from the alleged gang rape by Wright and three other inmates of fellow inmate Derrick Allman when Wright and Allman were being held in the Montgomery County Jail.

Evidence was introduced at trial that Allman was beaten, raped, and sexually assault-

ed by a group of fellow inmates in the county jail on the night of November 6–7, 1983. Allman identified Wright as one of his assailants and testified that Wright initiated the attack. According to Allman, Wright hit Allman and forced him to perform oral sex on Wright. Allman testified that shortly thereafter, Wright held him down in a bent-over position while other inmates took turns pushing a shampoo bottle up Allman's rectum. According to Allman, Wright's sexual attack upon him lasted for three hours and he was forced to perform oral sex a total of three times.

Allman also identified a note he had given to a deputy sheriff shortly after the attack, seeking help. The state also introduced a photograph of bruises on Allman's arm, which Allman claimed were a result of the beating by Wright.

Another witness at the trial, James Wood, testified that while he was incarcerated in the same cell as Wright and Allman, on November 6, he observed Wright and the other men "beat up" Allman. He testified that while he was in his bunk with his blanket over his head, because he did not want to get involved, he heard Allman state several times, "[d]on't do this to me," and heard him cry and "holler." Wood also heard Michael Jones, one of Wright's codefendants, tell Allman "to bend over." Finally, Wood testified that he heard Wright tell Allman: "You goin' suck this thing."

The final prosecution witness was another inmate, Charles Render. Render testified that he saw Wright hit Allman in the arms and upper body, and saw Wright force Allman to perform oral sex. According to Render, four men, including Wright, began punching Allman, then "it got out of hand." Render testified that Allman repeatedly screamed, cried and begged for the men to stop. Allman also asked Render for help, which Render refused. Finally, Render also observed Wright hold Allman down while two other men pushed the shampoo bottle up his rectum.

The cross-examination of Render by the defense is the focus of this appeal. On cross-examination of Render, the following colloquy took place:

Q. I believe you testified in answer to [defense counsel's] questions that you were convicted of a state, federal, or local offense in 1974 and 1981. Is that correct?

A. Seventy-four and '81?

Q. I might have the dates wrong. Are those incorrect dates?

A. Seventy-four and '80.

Q. All right. Isn't it a fact that on December 6, 1983, you entered a plea in the Montgomery County Court to a count of Drug Abuse?

A. Of '83?

Q. Yes.

A. Yes.

Q. And you are presently pending disposition of that case?

[THE PROSECUTOR]: We object, Your Honor.

THE COURT: I am going to sustain the objection. Unless the case has gone to judgment, it's not a conviction.

[DEFENSE COUNSEL]: May we approach the bench?

THE COURT: Yes.

(Whispered, off-the-record sidebar conference.)

THE COURT: Okay. At this point, the ruling stands. Why don't you pursue another area of inquiry.

Later, the jury was dismissed and the following discussion and questioning took place out of their presence:

THE COURT: Let's go on the record. Let me make the record, and then one of the four of you [(the defense lawyers)] can ask him the questions. An inquiry was made, I believe by [defense counsel], about Mr. Render's pending charge of Drug Abuse to which he's entered a plea of guilty, but has not been sentenced, and I indicated to counsel at sidebar that I would not permit any questions of this witness about that plea of guilty which has yet to result in a conviction, it being my view that it's the sentence of the Court, be it to prison or to probation, that dictates—this is the determinative moment when you

have a conviction, when you have a judgment.

. . . .

[DEFENSE COUNSEL]: I want to ask a couple of questions, and I think I basically want to make an argument on the record here.

Defense counsel then established, through cross-examination of Render on a separate record and out of the jury's hearing, the following: that Render pled guilty to a "drug abuse" charge and the case was referred to the probation department for a presentence investigation; that he then testified before the grand jury in this case; that "very shortly thereafter" he was released from custody on his own recognizance; that his scheduled sentencing for the drug abuse charge was twice continued; and that he was scheduled to be sentenced on the drug abuse charge sometime after his testimony in Wright's prosecution. Defense counsel then asked Render:

Q. Did the Prosecutor promise you anything in return for your testimony today?

A. No, sir.

[DEFENSE COUNSEL]: Your Honor, I don't have any other questions of him. I still want to make a record. . . . I think the man is telling it like it is. However, my argument is that there is no question that Mr. Render, as he sits here, knows that he is coming up for sentencing on whatever day it is. There is no question that the matter has been continued now an abnormally long time. I think the Court can take judicial notice of that, that normally when a person is on bond, the normal Probation report comes in four weeks

. . . .

Which would have made the Probation report due on or around early January.

Now, at first, I must admit that my argument was that Mr. Render—that this is part of it, and I still argue that this is admissible evidence to be heard by a jury, not for the sole purpose of conviction. I'm not arguing that.

THE COURT: I agree with you that if, in fact, Render's testimony is a factor in

his disposition and that Render knows that, this is a proper question to ask before the jury.

[DEFENSE COUNSEL]: And, Your Honor, my point is, I don't—I don't think he—He'll say "no" to my question, and I don't care what he says. It's obvious.

THE COURT: Well, it's not obvious to the jury.

[DEFENSE COUNSEL]: If Mr. Render had not testified, what was going to happen to you [ (Render) ]?

THE WITNESS: I don't know.

[DEFENSE COUNSEL]: Well, I'm just saying that with the passage of three months in time, it's obvious on its face that if this man hadn't said what they wanted him to say, that the judge was going to be talked to about his sentence.

THE COURT: Let me tell you this. If this witness is saying under oath today that he is unaware that he is to receive lenient treatment or different treatment because of his testimony, this witness is not going to be examined on this subject in front of this jury, because I don't think that the jury has the ability to draw the inference that you want the jury to draw. Now, you can produce a prosecutor, you can produce a defense lawyer. You can produce a probation officer. You can produce the judge in charge of this case. And if they tell you that this person is going to receive different treatment depending on how the case comes out or depending on whether or not he testifies, you can put him on or that person on in front of this jury.

At the conclusion of the evidence, the jury found Wright guilty on two of the rape counts and on the felonious sexual penetration count. On April 9, 1984, the court sentenced him to a fourteen to twenty-five year term of imprisonment on each count. The sentences were ordered to be served concurrently with each other and consecutively to Wright's underlying sentences for murder and robbery.

### B.

Wright's counsel filed a direct appeal to the Ohio Court of Appeals, raising several assignments of error, including those he would later press before the district court in his habeas action. The Ohio Court of Appeals issued an opinion overruling the assignments of error and affirming the judgment of the trial court. The court held that the trial court's limitation on Wright's cross-examination of Render stopped short of reversible error, reasoning that in light of the extensive evidence, Wright was not materially prejudiced by the trial court's refusal to allow the cross-examination.

Wright next filed a notice of appeal and a pro se memorandum in support of jurisdiction in the Ohio Supreme Court. The memorandum in support of jurisdiction urged the same grounds for relief that were presented to the Ohio Court of Appeals. The Ohio Supreme Court declined to hear Wright's appeal.

### C.

On March 13, 1990, Wright filed a petition for a writ of habeas corpus in the federal district court. He challenged his underlying convictions for murder and aggravated robbery, and also challenged his separate convictions for rape and felonious sexual penetration. In the latter challenge, the subject of this appeal, he claimed that he was denied his Sixth Amendment right of confrontation when the trial court denied him the opportunity to impeach Render's credibility by cross-examining him as to the status of his pending conviction and any potential impact his testimony against Wright might have on Render's sentence.

The district court ordered that the matter be referred to a magistrate judge for a report and recommendation. In his report, the magistrate judge recommended that the district court grant Wright's petition with respect to the rape and felonious penetration convictions. The magistrate judge determined that Wright had been denied his Sixth Amendment right to confront Render, a key prosecution witness. The magistrate judge was of the opinion that Wright's inability to inquire into Render's potential interest in offering testimony favorable to the prosecution rendered Wright's trial fatally flawed.

Upon de novo review, the district court agreed with the magistrate judge, and issued a conditional writ. Like the magistrate judge, the district court concluded that the defect in Wright's rape trial was not harmless.

Warden Dallman appeals from the issuance of the writ.

### II.

### A.

Dallman contends that the district court erred in finding that the state trial court had improperly limited Wright's cross-examination of Render. He contends that in this case, contrary to the district court's determination, the state trial court properly limited cross-examination of Render because of the court's finding that there was no basis for asking Render whether he expected to receive favorable treatment in return for his testimony against Wright. Moreover, according to Dallman, impeachment was allowed here, and the district court's ruling only amounted to a limitation of cross-examination on a point the state trial court determined was without factual support.

### B.

■ We review de novo the court's order granting the writ of habeas corpus. *Williams v. Withrow,* 944 F.2d 284, 288 (6th Cir.1991), *cert. granted,* —— U.S. ——, 112 S.Ct. 1664, 118 L.Ed.2d 386 (1992), *rev'd on other grounds,* —— U.S. ——, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). We give complete deference to evidence-supported state court findings, and review any findings of fact made by the district court only for clear error. *Id.* A writ of habeas corpus may issue to correct a "fundamentally unfair" trial, *id.,* but courts "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990).

■ A defendant's right to cross-examine prosecution witnesses is rooted in the Sixth Amendment, but not all limitations on cross-examination have constitutional implications. While the right to confront witnesses is undoubtedly important, we have held that a trial court is accorded "broad discretion" in limiting cross-examination. *United States v. Mohney,* 949 F.2d 1397, 1409 (6th Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992). Limitations on specific inquiries by the defense are permissible so long as "the jury has sufficient other information upon which it may make a discriminating appraisal of the witness's motives and bias." *United States v. Baker,* 494 F.2d 1262, 1267 (6th Cir.1974). This court has specifically held that a trial court may limit the cross-examination of a witness, even where that witness is the prosecution's key witness. *Dorsey v. Parke,* 872 F.2d 163, 167 (6th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 103, 107 L.Ed.2d 67 (1989).

■ Here, however, it is clear that the state trial court's evidentiary ruling was error. The court should have allowed the defense to cross-examine Render as to any potential interest he had in testifying favorably for the state. We have stated that, ordinarily, the bounds of a trial court's discretion are exceeded when the defense is not allowed to "plac[e] before the jury facts from which bias, prejudice or lack of credibility of a prosecution witness might be inferred." *United States v. Garrett,* 542 F.2d 23, 25 (6th Cir.1976). In this case, the trial judge should not have concluded for himself that the defense theory of bias and credibility was deficient; this was a determination for the jury. Thus, the district court correctly determined that the state trial court erred in limiting Wright's cross-examination of Render's potential bias and credibility.

### III.

### A.

Dallman next contends that even if the state trial court erred in limiting Wright's cross-examination of Render, the error was harmless. Dallman argues that the state's case against Wright was very strong, and that even without Render's testimony there was ample evidence to support a jury's verdict of guilt.

### B.

In *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986), the Supreme Court stated that "the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to ... harmless-error analysis." Thus, the important question that remains in this appeal is whether the state trial court's limitation of Wright's cross-examination of Render is an "infraction[ ] that violate[s] fundamental fairness." *Estelle v. McGuire,* ── U.S. ──, ──, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991) (internal quotations omitted).

■ As the Supreme Court has noted, " 'the Constitution entitles a criminal defendant to a fair trial, not a perfect one.' " *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986) (quoting *Delaware,* 475 U.S. at 681, 106 S.Ct. at 1436). While Wright's trial was not perfect, we believe he was neither denied a fundamentally fair trial nor denied fundamental rights under the Confrontation Clause.

This court's holding in *Dorsey* offers insight on this point. There, we reversed the district court's determination that limitation of the defendant's cross-examination of the prosecution's key witness was an error of constitutional magnitude. We noted that when a state trial court merely limits the *scope* of defense cross-examination, "the trial judge retains a much wider latitude of discretion." *Dorsey,* 872 F.2d at 167. We further stated that a writ in *Dorsey* was not warranted because: 1) the defendant had the opportunity to confront the witness in the presence of the jury; 2) the defendant had the opportunity to question him under oath; 3) the defendant was able to compel the witness to answer questions directly pertinent to his credibility; 4) the witness's in-court testimony allowed the jury to observe his demeanor; and 5) "the record suggests no facts or information ... which continued questioning

would have or might have exposed." *Id.* at 168.

Each of the same considerations is present here. Here, Render was subjected to searching and lengthy cross-examination following his direct testimony concerning the assault upon Wright. He was compelled to answer questions about his previous incarceration, his criminal record, and the drug charges to which he had recently pled guilty. The jury was able to observe his demeanor and to assess the credibility with which he described the events of November 6–7, 1983. Certainly his credibility could have been scrutinized ever more closely had the jury been permitted to hear of the inference suggested by defense counsel, not without grounds, that Render may have hoped for favorable treatment at his forthcoming sentencing in exchange for his testimony, even though no such assurance was given to him by the state.

In addition to Render's testimony, however, the jury heard Allman, the victim, give detailed testimony regarding the sexual assault he suffered, including his identification of Wright as the leader of the group who raped him. Wood, a cell mate, corroborated key elements of Allman's testimony. The testimony of these witnesses alone is sufficient to sustain the jury's guilty verdict.

Applying the Supreme Court's latest test for harmless error in the context of a trial, we cannot say that the trial court's limitations on cross-examination in this case had a " 'substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* — U.S. ——, ——, 113 S.Ct. 1710, 1712, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). Indeed, our review of the entire record convinces us that the state court's limitation on cross-examination was a minor evidentiary error.

We conclude, therefore, that the district court erred in finding that the trial court's error was more than harmless. While Wright's trial for sexual assault was not flaw-less, it was not fundamentally unfair. Wright was not denied his constitutional right to confront Render.

### IV.

For the foregoing reasons, we **REVERSE** the district court's issuance of a conditional writ of habeas corpus.