28 F.3d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eddie Lee BLACK, Jr., Defendant-Appellant.
 No. 93-6539.
 United States Court of Appeals, Sixth Circuit.
 July 5, 1994.
 
 Before: MARTIN, SUHRHEINRICH and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, Eddie Lee Black, appeals his convictions on nine counts involving the distribution of cocaine and possession with intent to distribute cocaine, for which he was sentenced to 70 months' imprisonment. Most of the errors assigned on appeal concern the government's use of a paid informant named Walter Kyle, who ultimately testified against Black in this case. We find no reversible error in connection with the issues raised on appeal, and we therefore affirm.
 
 
 2
 The evidence introduced at trial established that the Postal Inspector paid Kyle, who had a history of criminal convictions, to work undercover and determine if Annette Watson, a postal employee, was using drugs while on her route. Kyle met Watson and, on their first "date," asked her if she would buy drugs for him. She agreed to do so. According to both Kyle and Watson, on four occasions Watson showed Kyle to the apartment where the defendant lived in order to buy drugs. On each visit, Watson took money from Kyle and entered the defendant's apartment where, she testified, she purchased crack cocaine from Black. Watson also conceded that she had bought drugs from Black even before Kyle asked her to purchase drugs for him. Telephone records from Kyle's cellular phone verified that someone called Black from Kyle's car on one occasion; Kyle and Watson testified that it was Watson who had placed the call. Moreover, all but one of the trips to the defendant's apartment were audiotaped; in these tapes Watson suggested, "Let's go by Black's."
 
 
 3
 Kyle could not testify about the defendant's actions inside the apartment. On one occasion, however, he did deal directly with the defendant. After Watson called him to inform him that they had received bad cocaine from Black, Kyle and Watson returned to Black's apartment to replace the cocaine. On this visit, Black came outside to the car, acknowledged that he had received bad crack from a supplier, and replaced the crack Kyle had purchased without charge. He said on audiotape, "I take care of my business." The defendant denied selling crack, and explained this incident by insisting that he was merely a conduit for a friend, who had sent him outside to give Watson and Kyle the crack.
 
 
 4
 During her testimony, Watson said that she was addicted to cocaine, that she was using cocaine at the time of these sales, and that she never would have bought crack for someone else if Kyle had not encouraged her to do so. She testified that she fell in love with Kyle and that they had had sexual relations twice. Kyle denied that he had controlled or manipulated Watson, or that he had been sexually involved with her. Defense counsel argued, however, that the government's abuse of Kyle's relationship with Watson entrapped Watson, who thereby became a government agent and, in turn, vicariously entrapped the defendant. Unconvinced, the district judge refused to instruct the jury on entrapment.
 
 
 5
 Prior to trial defense counsel filed two motions, one to dismiss the indictment and the other to suppress Kyle's testimony, based on the government's allegedly "outrageous conduct" in inducing Annette Watson to buy drugs from the defendant for Walter Kyle. The district judge denied both motions as untimely, and defense counsel later recharacterized the same set of facts as the basis for his request for an entrapment instruction. That motion was denied also, and the defendant now claims error entitling him to dismissal of the charges or, at the least, a new trial.
 
 
 6
 We conclude that an entrapment instruction was not warranted in this case. Although the district court found "conflicting evidence" concerning Black's predisposition to sell cocaine, there was no evidence of government inducement for Black to commit a crime. The only other basis on which the defendant could possibly predicate grounds for relief would be that of indirect or "vicarious entrapment." In this regard, he argues that he was induced by the government to sell drugs through Watson, who unknowingly became a government agent. Black argues, specifically, that Kyle took advantage of Watson's drug addiction and their alleged sexual relationship to encourage her to purchase drugs for him, and that because of this manipulation, Watson became an unwitting government agent who then persuaded Black to sell drugs.
 
 
 7
 As a legal matter, we have previously held that "the doctrine of entrapment does not extend to acts of inducement on the part of a private citizen who is not a government official," United States v. Lee, 694 F.2d 649, 654 (6th Cir.), cert. denied, 460 U.S. 1086 (1983), and we have specifically rejected the indirect-entrapment doctrine. United States v. Mendez-Ortiz, 810 F.2d 76, 79 n. 1 (6th Cir.1986), cert. denied, 480 U.S. 922 (1987). Only when the proof shows that "the inducement is initiated by government or by private citizens acting as their agents upon their instructions or directions " will we uphold an entrapment defense. United States v. McLernon, 746 F.2d 1098, 1109 (6th Cir.1984). Clearly, the facts in this case do not bring Annette Watson within the ambit of government agency contemplated by McLernon.
 
 
 8
 If, under these circumstances, the defendant cannot successfully claim to have been entrapped by the government and cannot, therefore, make out a valid entrapment defense, he can hardly be heard to contend that the government was guilty of "outrageous conduct" in this case. We find no error in the district court's rulings on either the pretrial motions claiming "outrageous conduct," or on the request for a jury instruction on entrapment.
 
 
 9
 Nor do we find any reversible error in connection with limitations placed on the cross-examination of Walter Kyle, who testified for the government at Black's trial. In order to impeach Kyle, defense counsel invoked Fed.R.Evid. 404(b) and proposed to question him about his arrest record, which, going back to 1980, included charges (but not convictions) of public intoxication, disorderly conduct, assault and battery, attempt to deliver a controlled substance, possession of a controlled substance, burglary, and failure to return rental property.
 
 
 10
 The district court ruled, correctly, that Rule 404(b) does not pertain to evidence on the issue of credibility but to evidence of "other crimes, wrongs, or acts" to prove motive, intent, or lack of mistake or accident, or for some purpose other than proving behavior in conformity with the bad conduct attributed to a defendant. The defendant's argument that he was attempting to impeach Kyle by establishing his motive for cooperating with police is insufficient to bring the disputed line of questioning within the purview of Rule 404(b).
 
 
 11
 Moreover, evidence of arrest is not admissible under Rule 608(b), which governs proof of "specific instances of conduct" offered to impeach a witness's credibility, nor is proof of conduct that does not bear on the witness's "character for the truthfulness or untruthfulness." Fed.R.Evid. 608(b). In United States v. Martin, 920 F.2d 393 (6th Cir.1990), another case involving the credibility of a paid government informant, we upheld limitations by the district court on proposed cross-examination that "concerned arrests of [the informant] which did not result in convictions and matters that went so far back in time that the court found them to be of dubious relevancy." Id. at 395.
 
 
 12
 Moreover, even if we were to find that the restrictions placed on Kyle's cross-examination were unjustified in some respect, the error would not warrant reversal. In Martin, we noted that "[e]ven in cases where an improper evidentiary ruling limits cross-examination, the test is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory'." Id. at 396 (citation omitted). In this case, the defendant was permitted to present evidence of Walter Kyle's two convictions for theft and burglary, as well as evidence of the payments he had received for his work as a government informant. Moreover, in order to impeach Kyle further, defense counsel was permitted to ask him about his drug-dealing outside of his work as an informant. Hence, in response to the defendant's claim of error concerning cross-examination of Walter Kyle, we can only echo our observation in Martin that "[t]here can be little doubt here that the jury was virtually inundated with negative information relating to [the informant] and his credibility." Id. We thus find no reversible error in connection with Kyle's testimony.
 
 
 13
 Finally, we reject altogether the defendant's challenge to the legal sufficiency of the conflicting evidence. Most of the challenged testimony was bolstered by introduction of the audiotapes, and the jury resolved all remaining issues of credibility in the government's favor. The standard of review for sufficiency of the evidence, as set out in Jackson v. Virginia, 443 U.S. 307, 319 (1979), has clearly been met in this case.
 
 
 14
 For these reasons, the judgment of the district court is AFFIRMED in all respects.