NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0809n.06
Filed: November 19, 2007

No. 06-1800

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Apppellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Edward Robinson, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: MOORE and GRIFFIN, Circuit Judges, and GRAHAM,[*] District
Judge.

GRAHAM, District Judge. Defendant-appellant Edward Robinson
was indicted in the Eastern District of Michigan on drug and
weapons charges allegedly committed on April 22, 2004. In a
superseding indictment filed on December 14, 2005, defendant was
charged with conspiracy to possess with intent to distribute and to
distribute heroin and more than five grams of cocaine base in
violation of 21 U.S.C. § 846 (Count One); possession with the
intent to distribute more than five grams of cocaine base in
violation of 21 U.S.C. § 841(a)(1) (Count Two); possession with
intent to distribute heroin in violation of § 841(a)(1) (Count
Three); using, carrying and brandishing a firearm during and in
relation to the drug trafficking crimes charged in Counts 1 through
3 of the indictment in violation of 18 U.S.C. §924(c) (Count Four);
and being a felon in possession of a firearm in violation of 18
U.S.C. §922(g)(1) (Count Six).

---

[*]The Honorable James L. Graham, Senior United States District Judge for the
Southern District of Ohio, sitting by designation.

Defendant's case proceeded to trial before a jury. The record reveals that on April 19, 2004, a confidential informant working under the supervision of Officer Don Eastman of the Detroit Police Department Narcotics Bureau, was sent to 2701 Chrysler, Apartment Number 1721, to purchase crack cocaine. The transaction was completed, and on April 21, 2004, Officer Eastman obtained a search warrant for the premises. JA 28-29.

The warrant was executed on April 22, 2004, at approximately 9:15 a.m. JA 444. Prior to entry, the officers knocked on the door and announced their presence. JA 449-450. When they received no response, a forced entry was ordered. JA 451. Officer Jerold Blanding of the Narcotics Bureau was the first officer through the door. He was armed with a short-barreled shotgun. JA 444. As Officer Blanding entered the apartment, he saw the defendant sitting in a chair in the back bedroom. JA 452-53, 495. Three women were also in the apartment. Officer Blanding ordered defendant to show his hands. JA 453-54. Defendant reached with his left hand down to his left side, pulled out a pistol, and leaned forward preparing to aim the pistol at the officer, at which point Officer Blanding shot defendant in the abdomen. JA 455-58. Defendant fell back into the chair, and the gun fell to the left between defendant's leg and the chair. JA 458. Officer Blanding obtained the pistol and placed it on the floor while defendant was being handcuffed. JA 473. Defendant was then transported to the hospital.

Upon searching the apartment, the police observed 135 ten-dollar baggies of crack cocaine, each weighing approximately .101 grams, three baggies of heroin, a razor blade, a scale, and a

2

sifter used to process heroin located on a coffee table near the defendant's chair in the back bedroom. JA 617-618, 630-31, 635, 643-44, 677-78. A .357 Magnum handgun was found in the back bedroom under the cushion of a sofa on which a woman was sleeping at the time of the entry. JA 461-62. The officers also recovered $2,495 in cash found in a locked bag located next to the chair in the bedroom. JA 836-37.

The jury convicted defendant on all counts. The district court imposed a sentence of 120 months on Counts One and Two and 70 months on Counts Three and Six. As to Count Four, the district court declined to find that defendant brandished the firearm, and imposed a consecutive sentence of 60 months for using or carrying a firearm during a drug trafficking offense. JA 1125. Defendant now appeals his convictions.

I.

Defendant raises as error the district court's failure to suppress the evidence obtained as a result of the search warrant. In the affidavit supporting the search warrant, see JA 56, Officer Eastman stated that he is "a member of the Detroit Police Department Narcotics Bureau" and that he "has been assigned in this capacity for approximately seventeen years." He stated that he was seeking a search warrant for 2701 Chrysler, Apartment Number 1721, as well as authorization to search the person of an individual known as "'Earl, Jr[.],' B/M/late 40's, 6'2", 190lbs, and wearing glasses." He further stated:

> The affiant is working in conjunction with other members of the Narcotics Bureau, and a registered informant SOI #2179, who is credible and reliable, having been utilized by members of the Narcotics Bureau on at least 10 occasions, resulting in the arrests of at least 10 persons for VCSA and related offenses, with at least 5

3

persons having been convicted in 36th District and 3rd Circu[i]t Courts, and with some cases still pending.

On 4-19-04, the affiant met with the SOI and formulated a plan to make a controlled substance purchase from the above location. The SOI was searched for drugs and money, with negative results obtained. The SOI was then issued a sum of pre-recorded secret service funds with which to make an [sic] purchase, and then driven to the above location. Upon leaving the affiant, the SOI walked directly to the front entrance of the above location, whereupon entering the lobby and out of the affiant's sight, stayed for a short time. Upon exiting the building, the SOI returned directly to the affiant, turning over to the affiant a quantity of suspected cocaine, and stating that it had been purchased from the above location, and the above described B/M. The SOI was once again searched for drugs and money with negative results.

The evidence was conveyed to the Narcotics Bureau analysis section where it was tested and found to contain cocaine by PO Dekun. The cocaine was placed into LSF N002889104.

During trial, Officer Eastman testified that the funds given to the informant were not pre-recorded funds. JA 258. During a pretrial hearing, Officer Michael Deacon (his name was misspelled as "Dekun" in the affidavit) testified that he performed a test on the substance purchased by the confidential informant which was positive for cocaine, but that this analysis was not performed in a laboratory. Defendant moved to suppress the warrant under Franks v. Delaware, 438 U.S. 154 (1978), arguing that two false statements in the warrant rendered it invalid. The district court denied the motion to suppress.

Upon review of a "district court's ruling on a Franks challenge, we review de novo the district court's legal conclusions, and we review the district court's findings of fact for clear error." United States v. Keszthelyi, 308 F.3d 557, 566

4

(6th Cir. 2002). The first step in the <u>Franks</u> analysis is to determine whether "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit[.]" <u>Franks</u>, 438 U.S. at 155-56. Mere inadvertence or negligence in making erroneous statements is insufficient to require exclusion. <u>United States v. Elkins</u>, 300 F.3d 638, 649 (6th Cir. 2002). If the affidavit is found to contain false statements knowingly or recklessly made, then the next step in the analysis is to determine "with the affidavit's false material set to one side," whether "the affidavit's remaining content is insufficient to establish probable cause[.]" <u>Franks</u>, 438 U.S. at 156. If the affidavit, minus any recklessly or intentionally made and materially false statements no longer establishes probable cause, then the court must hold the search warrant invalid. <u>Franks</u>, 438 U.S. at 156.

In regard to the reference to "pre-recorded" funds, Officer Eastman testified at trial that the funds used in this case were not pre-recorded, and that this was "just a common terminology used in each and every affidavit that I've ever done[.]" JA 258. Although the district court indicated its disapproval of the use of this language as boilerplate, the court never made a specific finding as to whether the false statement was intentionally or recklessly included in the affidavit. Instead, the court concluded that use of the term "pre-recorded" was not material. The court noted that because there was no reference in the affidavit to any additional fact which would render the pre-recorded nature of the funds relevant, such as the discovery of pre-recorded funds on the premises, whether the funds used to purchase drugs were pre-

5

recorded had no bearing on the existence of probable case or the magistrate's determination. JA 1092-1093. This court agrees. Even assuming that the false description of the funds as "pre-recorded" was knowingly or recklessly made, the characterization of the funds as "pre-recorded" was not material to the magistrate's finding of probable cause in this case.

As to the reference to the "Narcotics Bureau analysis section," defendant argued that the term "analysis section" suggests a laboratory. Officer Deacon testified that he works in the Narcotics Prisoner Processing Unit. JA 312. Although he was not familiar with the term "analysis section," he stated that he does perform drug testing. JA 314. He testified that the chemicals he uses to test for the presence of a controlled substance are the same chemicals used in the lab, and that any distinction arises in testing for potency or purity. JA 314. He stated that he did perform the analysis in the instant case, which was positive for cocaine, and that he assigned the lock seal folder a number, as stated in the affidavit. JA 316.

The district court found that the reference to the "analysis section" was not included in the affidavit with the intent to mislead the magistrate concerning the nature of the drug test, but rather was an "inartful mischaracterization." JA 346-348. The court noted that the affidavit stated that the test was performed by Officer Deacon, with no indication that he was a chemist or lab technician. JA 346. The fact that the test was performed by a police officer suggests a field test rather than a laboratory analysis, and supports the district court's finding that the affiant had no intent to mislead the magistrate concerning where

6

the test was conducted. With the exception of the use of the ambiguous term "analysis section," the other statements concerning the testing of the substance, including the fact that the test was positive for cocaine, were true and correct. We agree with the district court's conclusion that the reference to "analysis section" was not an intentional or material falsehood.

The district court also performed the second branch of the Franks analysis. The district court noted the fact that the informant had worked with the police on numerous occasions and "had a track record which had been borne out." JA 1084. The court further noted that Officer Eastman searched the informant and found no drugs or money on his person before he entered the building, and that when he searched the informant on his return, he had cocaine but no funds. JA 1084. The court concluded that even disregarding the inaccurate statements in the affidavit, the warrant was still supported by probable cause. JA 1084-85, 1093-94.

"To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005) (internal quotations and citation omitted). The affidavit in this case is based in large part on information provided by a confidential informant. In such a case, the court must consider the veracity, reliability, and basis of knowledge for that information as part of the totality of the circumstances for evaluating that information. United States v. Helton, 314 F.3d 812, 819 (6th Cir. 2003). However, "the affiant need only specify that the confidential informant has given

7

accurate information in the past to qualify [the informant] as reliable." United States v. Greene, 250 F.3d 471, 480 (6th Cir. 2001).

The affidavit indicates that the informant was known to the affiant, and that he had worked with officers of the Narcotics Bureau on at least ten previous occasions, resulting in the arrests of at least ten persons and at least five convictions. This information was sufficient to establish the reliability of the informant. See United States v. Rodriguez-Suazo, 346 F.3d 637, 646 (6th Cir. 2003)(informant assisted law enforcement with information leading to more than three arrests and convictions); United States v. Williams, 224 F.3d 530, 532-33 (6th Cir. 2000)(finding a confidential informant reliable where the affidavit stated that the informant had provided information leading to "arrests and convictions").

The affidavit also states that Officer Eastman, an officer with seventeen years experience in the Narcotics Bureau, searched the informant with negative results, gave funds to the informant, and watched the informant enter the building at 2701 Chrysler. When the informant returned, he delivered a substance to the officer which tested positive for cocaine. The informant was searched again, and he had no cash or drugs on his person. The affidavit further states that the informant told the officer that he had purchased the substance at Apartment Number 1721 from the individual described in the affidavit.

We agree with the district court that the facts contained in the affidavit are sufficient to establish probable cause even if the false statements are disregarded, and defendant's motion to

8

suppress the warrant was properly denied.[1]

                                II.

    Defendant argues that his right to confront witnesses under the Sixth Amendment of the United States Constitution was violated when Officer Eastman was permitted to testify concerning information the police had received about there being a known shooter on the premises. We review the question of whether the admission of evidence violates the Confrontation Clause de novo. United States v. Stover, 474 F.3d 904, 912 (6th Cir. 2007).

    The Confrontation Clause of the Sixth Amendment gives a criminal defendant the right to confront the witnesses against him and the opportunity to cross-examine such witnesses. Stewart v. Wolfenbarger, 468 F.3d 338, 347 (6th Cir. 2006). In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that this provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant ha[s] had a prior opportunity for cross-examination." Id. at 53-54. However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 59 n. 9; see also United States v. Pugh, 405 F.3d 390, 399 (6th Cir. 2005).

---

[1] Defendant argues that the warrant must be held invalid because, if the magistrate had known that the affidavit contained false statements, he may have concluded that Officer Eastman was totally lacking in credibility and may have declined to issue the warrant, although there is no evidence that any of the other statements in the affidavit were false. This approach would be equivalent to holding that the mere presence of false statements is sufficient to invalidate the warrant. That is not the law. Rather, Franks also requires an independent analysis of the affidavit by the reviewing courts to determine if the facts in the affidavit, minus the false statements, are sufficient to establish probable cause. Franks, 438 U.S. at 156. It is only when probable cause is found lacking during this process that the warrant must be held defective. Id.

9

In this case, defense counsel cross-examined Officer Eastman concerning the short amount of time the police waited after knocking and announcing their presence before they broke down the door of the apartment. JA 270-273. On redirect, the prosecutor was permitted to ask Officer Eastman why the police entered the apartment so quickly, and Officer Eastman stated that "in our pre-raid debriefing, we had information from our SOI [that] there may have been a person on the premises who was deemed a shooter. And so for that fact, the safety of the raid, personnel was the greater consideration at that point." JA 284. He was then asked what he meant by "shooter," and he responded, "Someone who is known to have shot people ... in the past." JA 284. He explained that if the information was reliable, it meant that an increase in the time it took the officers to enter the apartment also raised the likelihood that they would receive fire from an individual on the inside. JA 284. After this testimony, the court instructed the jury:

> In this case, you may use Officer Eastman's testimony to understand and evaluate the reasons why he went into–he and the other officers went into the door as quickly as they did.

> In other words, you may use it in evaluating what was his state of mind at the time and what they knew at the time.

> However, you may not use it for the truth of what was stated in these–in these statements.

> In other words, that there was, in fact, a shooter in the apartment at any time previously, only as the evidence bears upon why the officers acted as they did. Okay? But not for the truth.

JA 285-86.

The record indicates that Officer Eastman's testimony concerning the information the police had received about a possible

shooter was offered not for the truth of the matter asserted, but rather to explain, in response to the defense inquiries, why the police did not wait longer after announcing their presence before breaking down the door.  See United States v. Chance, 306 F.3d 356, 385 (6th Cir. 2002)("[W]here one party has 'opened the door' on an issue, the opponent, in the trial court's discretion, may introduce evidence on the same issue to rebut any false impression that may have been created by the earlier admission of evidence.").  The trial court gave a cautionary instruction to the jury which limited the jury's consideration of the evidence to that purpose.  "Federal courts generally 'presume that juries follow their instructions.'" Hill v. Mitchell, 400 F.3d 308, 325 (6th Cir. 2005)(quoting Washington v. Hofbauer, 228 F.3d 689, 706 (6th Cir. 2000)).[2]  Since the statement was not offered for the truth of the matter asserted, Officer Eastman's testimony did not violate the Confrontation Clause, and the trial court did not err in allowing this testimony.

## III.

Defendant argues that the trial court erred in precluding defense counsel from cross-examining Officer Blanding concerning three prior incidents in which Officer Blanding discharged his weapon.[3]  The district court concluded that the proffered evidence

---

[2]Even if the jury was tempted to ignore these instructions, there was no testimony identifying either defendant or any of the three females found in the apartment as the "shooter" referred to in the statement.

[3]The first incident allegedly occurred in 1995 when Officer Blanding, while searching an abandoned building for squatters, shot at a pigeon that startled him.  In 1997, Officer Blanding was off duty and standing outside a nightclub at 2:00 a.m.  A man drove up to Officer Blanding and began firing, and Officer Blanding returned the fire, emptying his weapon.  In 1998, Officer Blanding, again off duty, was withdrawing money from an ATM machine in a bank parking lot when a man opened his car door.  Seeing an object in the man's hand and thinking that he was being robbed, Officer Blanding shot the man.  JA 166-168.

was not admissible under Fed.R.Evid. 404(b).  This court reviews the district court's evidentiary rulings for an abuse of discretion.  United States v. Ayoub, 498 F.3d 532, 547 (6th Cir. 2007).  "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact."  Schenck v. City of Hudson, 114 F.3d 590, 593 (6th Cir. 1997).  The lower court's ruling will be reversed only if we are firmly convinced that a mistake has been made.  Pugh, 405 F.3d at 397.

Fed.R.Evid. 404(b) provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In determining the admissibility of evidence under Rule 404(b), the district court must apply a three-step analysis: (1) is there sufficient evidence that the other act in question actually occurred; (2) is the evidence of the other act probative of a material issue other than character; and (3) does the probative value of the evidence substantially outweigh its potential unfair prejudicial effect.  United States v. Jenkins, 345 F.3d 928, 937 (6th Cir. 2003).

Under Rule 404(b), evidence of prior acts is not admissible to show criminal disposition or propensity.  United States v. Lattner, 385 F.3d 947, 956 (6th Cir. 2004)(evidence of past criminal activity is inadmissible to show criminal propensity); United States v. Ushery, 968 F.2d 575, 580 (6th Cir. 1992)(Rule 404(b) bars evidence offered to show criminal disposition or propensity).  Rule 404(b)

12

applies to any person, and contemplates the prior act by another person being offered as exculpatory evidence by the defendant as "reverse 404(b) evidence." See United States v. Lucas, 357 F.3d 599, 605 (6th Cir. 2004). However, evidence of prior acts of a third party offered by a defendant is subject to the same strictures and analysis as Rule 404(b) evidence offered by the government. Id. at 605-06; see also United States v. Williams, 458 F.3d 312, 317 (3d Cir. 2006)(prohibition against propensity evidence applies to acts of a third party offered by a defendant).

Defendant argues that the proffered evidence was admissible under Rule 404(b) because it tended to show that Officer Blanding may have fired at defendant even though he did not see defendant with a gun, and that he lied about seeing defendant pull a weapon in order to shield himself from liability. Assuming arguendo that there was sufficient evidence that the other acts occurred, the district court correctly noted that the evidence of the prior incidents went to Officer Blanding's character, specifically, his propensity to "shoot first and think up an explanation later." JA 581. A person's propensity to act in a certain way is not a ground for the admission of prior act evidence under Rule 404(b). Insofar as defendant argued that the prior acts might bear on Officer Blanding's credibility, the reference to "motive" in Rule 404(b) does not refer to a motive to testify falsely. See United States v. Black, 28 F.3d 1214 (table), 1994 WL 325992 at *2 (6th Cir. July 5, 1994)(Rule 404(b) does not pertain to evidence on the issue of credibility); United States v. Farmer, 923 F.2d 1557, 1567 (11th Cir. 1991)(the word "motive" as used in Rule 404(b) does not refer to a motive to testify falsely). See also, United States v.

Taylor, 417 F.3d 1176, 1180 (11th Cir. 2005)(holding that trial court properly disallowed evidence of citizen complaints of alleged racial harassment, brutality and evidence planting against officer to show that officer had a motive to frame the defendant and lie at trial; "motive" in Rule 404(b) context does not refer to witness's motive to testify falsely). The district court correctly held that the proffered evidence was not admissible under Rule 404(b).

The district court was also concerned about the danger of confusion which would arise by "having a parade of witnesses ... testifying about acts not directly related to" the case against defendant, that "the jury could easily be misled and confused and that this would be not only confusing to the jury, but would be very prejudicial to the government's case." JA 582-83. Under Fed.R.Evid. 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403. The district court has broad discretion in determining whether the danger of unfair prejudice outweighs the probative value of the evidence. United States v. Mack, 258 F.3d 548, 555 (6th Cir. 2001). The district court did not abuse its discretion in holding that even if the evidence was admissible, its probative value was substantially outweighed by the danger of jury confusion and unfair prejudice to the government.[4]

Defendant claims that the inability to cross-examine Officer

---

[4]In correlation with prohibiting inquiry into the prior shooting incidents involving Officer Blanding, the district court, to defendant's benefit, also denied the government's request to delve into the defendant's alleged tendency to brandish a weapon when confronted by the police, and struck the brandishing element from the § 924(c) count, thereby reducing the potential penalty on that count. JA 582-84; 1125. These additional rulings are not at issue in this appeal, and we express no opinion as to whether they were correct.

14

Blanding concerning the prior shootings denied defendant his Fifth Amendment right to present evidence in his defense and his Sixth Amendment right to cross-examine his accusers. However, "a complete defense does not imply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence." Lucas, 357 F.3d at 606. Since the proffered evidence was not admissible under Rule 404(b), defendant's Fifth Amendment challenge fails.

Likewise, "not all limitations on cross-examination have constitutional implications" and courts are accorded broad discretion in limiting cross-examination. Wright v. Dallman, 999 F.2d 174, 179 (6th Cir. 1993); see also, Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."). "Limitations on specific inquiries by the defense are permissible so long as 'the jury has sufficient other information upon which it may make a discriminating appraisal of the witness's motives and bias.'" Dallman, 999 F.2d at 179 (quoting United States v. Baker, 494 F.2d 1262, 1267 (6th Cir. 1974)). Here, defense counsel thoroughly cross-examined Officer Blanding concerning his encounter with the defendant. Officer Blanding was asked if he could have been mistaken under the pressures of the situation about seeing a gun in defendant's hand. JA 527. Officer Blanding acknowledged that if he admitted that defendant did not have a gun, this would expose him to civil

15

liability and criminal prosecution. JA 528-29. He was questioned about whether he could make a mistake about someone having a gun. JA 530. The exclusion of evidence of the prior shootings did not prevent the jury from appraising Officer Blanding's motive and credibility, and the trial court's ruling did not infringe upon the defendant's right to confront witnesses under the Sixth Amendment.

IV.

Defendant argues that the court erred in admitting medical records which indicated that defendant had cocaine in his system at the time he was arrested. Defendant argues that this evidence was not relevant to the issue of whether he acted in an aggressive manner during the raid.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Defendant does not contend that the issue of whether he acted aggressively was not "of consequence to the determination of the action[.]" Evidence that the defendant acted aggressively supported Officer Blanding's testimony that defendant pulled a gun, which in turn was relevant to prove that defendant used or carried a firearm during and in relation to a drug trafficking offense, as alleged in Count 4, and possessed a firearm, as alleged in Count Six. Rather, defendant argues that the district court erred in determining that the presence of cocaine in defendant's system made it more probable that the defendant acted aggressively.

Sergeant Joseph Harris testified that he had been a police officer for nineteen years. JA 614. Based on Sergeant Harris's

16

experience in narcotics investigations with the Detroit Police Department and the Drug Enforcement Agency, the district court found that he could testify as an expert concerning narcotics trafficking. JA 619-22. Sergeant Harris testified that he had purchased drugs approximately five hundred times. JA 625. He further stated, based on his experience, that crack cocaine dealers sometimes use cocaine, and that he had often seen persons under the influence of cocaine. JA 669-70. Sergeant Harris testified that persons under the influence of cocaine are "[h]ard to contain, don't follow directions. Strong, very combative." JA 671. He also stated that persons under the influence of cocaine are very aggressive, and will not follow orders due to their combative nature. JA 672. The district court noted this testimony and concluded that the fact that defendant was under the influence of cocaine went to the defense theory that defendant did not respond aggressively with a gun. JA 967.

The medical records satisfy the requirements for relevant evidence. In light of Sergeant Harris's testimony that cocaine users act aggressively, the medical records stating that defendant had cocaine in his system at the time of his arrest made it more probable than it would have been without that evidence that he acted aggressively by pulling a firearm. Defendant notes that the records failed to indicate the concentration of cocaine in defendant's system, but this goes to the weight to be given the evidence, not to its admissibility. See Moross Ltd. Partnership v. Fleckenstein Capital, Inc., 466 F.3d 508, 516 (6th Cir. 2006)(weakness in factual basis for expert opinion goes to weight of evidence rather than admissibility). The district court did not

17

abuse its discretion in admitting this evidence.

V.

Defendant argues that the prosecution failed to disclose evidence prior to trial in violation of Fed.R.Crim.P. 16 and Brady v. Maryland, 373 U.S. 83 (1963). During trial, defendant moved for a mistrial due to the government's alleged failure to disclose certain evidence prior to trial, specifically: (1) a fingerprint analysis of a print identified as belonging to a co-defendant; (2) the shirt worn by defendant at the time he was shot; and (3) the falsity of the statement in the warrant affidavit that the funds used by the confidential informant were pre-recorded funds. The court denied the motion for a mistrial. JA 598-613. Defendant repeated these arguments in a motion for a new trial made prior to sentencing. JA 176-177. The trial court also denied the motion for a new trial. JA 1105.

We review a district court's decisions under Rule 16, as well as the denial of a mistrial due to delayed disclosure of evidence, for abuse of discretion. United States v. Davis, 306 F.3d 398, 420 (6th Cir. 2002); United States v. Quinn, 230 F.3d 862, 866 (6th Cir. 2000). The district court's determination as to the existence of a Brady violation is reviewed de novo. United States v. Graham, 484 F.3d 413, 416-17 (6th Cir. 1998). For the following reasons, we conclude that defendant was not denied a fair trial.

Rule 16 provides that the government, upon request by a defendant, must permit the defendant to inspect and to copy or photograph papers or tangible objects "if the item is within the government's possession, custody, or control" and is material to preparing the defense, intended for use in the government's case in

18

chief, or belongs to the defendant. Fed.R.Crim.P. 16(a)(1)(E). Rule 16 also provides that the government must permit defendant to inspect and copy or photograph the results or reports of any scientific test if: (1) the item is within the government's possession, custody, or control; (2) counsel for the government knows or should have known of the item's existence through the exercise of due diligence; and (3) the item is either material to the preparation of the defendant or intended for use during the government's case in chief. Fed.R.Crim.P. 16(a)(1)(F).

If the trial court finds that a violation of Rule 16 has occurred, the court may impose a number of sanctions, including entering an order mandating discovery or inspection, granting a continuance, excluding the undisclosed evidence, or granting any other remedy "that is just under the circumstances." Fed.R.Crim.P. 16(d)(2). In deciding the appropriate remedy, the court considers: (1) the reasons for any delay in producing materials, including ill intent or bad faith; (2) the degree of prejudice, if any, to the defendant; and (3) whether any prejudice may be cured with a less severe course of action like a continuance or a recess. United States v. Maples, 60 F.3d 244, 247 (6th Cir. 1995).

The Supreme Court held in Brady that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. To establish a Brady violation, the defendant must show that: (1) the evidence must be favorable to the defendant because of its exculpatory or impeaching nature; (2) the evidence was willfully or inadvertently suppressed

19

by the government; and (3) the defendant was prejudiced. <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999). Evidence "is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Id</u>. at 280 (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985)). Evidence is favorable to the defendant if it exculpates the defendant or enables the defendant to impeach witnesses. <u>Bagley</u>, 473 U.S. at 676.

In this case, the evidence noted by defendant was disclosed during the course of the trial. "<u>Brady</u> generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." <u>United States v. Bencs</u>, 28 F.3d 555, 560-61 (6th Cir. 1994). Delay only violates <u>Brady</u> when the delay itself causes prejudice. <u>United States v. Blood</u>, 435 F.3d 612, 627 (6th Cir. 2006).

## A.

The first alleged violation relates to the results of a fingerprint analysis. On the first day of trial, prior to opening statements, counsel for the government informed the court that he had just spoken with the lab on the phone, and was informed that the lab had identified the fingerprint of co-defendant Bianca Shelman. The prosecutor did not know on what piece of evidence the print had been found or the quality of the print, and he told the lab to fax the report to chambers. JA 356. Since the parties had not yet seen the report, the court instructed counsel not to mention it during opening statements. JA 357. In arguing the mistrial motion, defense counsel expressed no problem with the fingerprint analysis itself because counsel viewed that evidence as

being exculpatory to the defendant, but counsel argued that defendant was prejudiced because counsel was not able to refer to this evidence during the opening statements. JA 603-07. The district court concluded that the defendant failed to show prejudice because the ability to use the fingerprint evidence during trial was more effective than an opening statement, which was not evidence. JA 613.

No violation under Rule 16 or <u>Brady</u> occurred in regard to the fingerprint analysis. The district court noted that the analysis was completed right before the trial began. JA 1069-1070. Defense counsel also stated that "the fingerprint analysis, apparently, did not take place until one business day before trial began." JA 603. There is no evidence that the results of the analysis were in the possession, custody or control of the government prior to trial. Thus, the failure to provide the report of the analysis to defendant prior to trial did not violate Rule 16. Likewise, "<u>Brady</u> and its progeny have recognized a duty on the part of the prosecutor to disclose material evidence that is favorable to the defendant over which the prosecution team has control." <u>Graham</u>, 484 F.3d at 417. <u>Brady</u> does not impose a duty upon the government to discover information which it does not possess. <u>Id</u>.

In any event, defendant has not shown prejudice due to the delay in disclosure, since he was able to take advantage of the exculpatory fingerprint evidence at trial. Detective Sergeant Charles Morden testified that a fingerprint belonging to Bianca Shelman was found on a plastic bag, and stated on cross-examination that no other identifiable fingerprints were found. JA 821, 832. Defense counsel argued during closing that no fingerprint evidence

21

linked defendant to the drug evidence found at the scene. JA 1030. Defendant has shown no prejudice from the fact that counsel was unable to refer to this evidence during opening statement.

B.

The second alleged violation concerns the government's failure to turn over the shirt defendant was wearing when he was shot. This evidence was subject to disclosure under Rule 16. However, there is no evidence that the government intentionally failed to disclose this evidence to the defendant in violation of Rule 16. The district court noted that it was not clear that the shirt was not made available at the original production of evidence. JA 1079. The prosecutor indicated that he did not recall defense counsel asking for the shirt, and stated that "had I known that's something they want, of course, we give it over." JA 608-9. During trial, the court ordered the government to turn the shirt over to defense counsel, and the government complied. JA 609.

Since the shirt in question was the defendant's property, the defense also knew or had reason to know that this evidence existed. "[T]here is no Brady violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question[.]" Carter v. Bell, 218 F.3d 581, 601 (6th Cir. 2000). If the defendant wanted to arrange for an expert analysis of the shirt prior to trial, he could have petitioned the government and the court for the production of the shirt for testing.

In addition, defendant has not shown how he was prejudiced by the failure to produce the shirt sooner. In denying defendant's motion for a new trial, the district court noted there was no

22

indication that the shirt was exculpatory evidence. JA 1079. Defendant argued that the shirt was relevant to the issue of whether he was shot on his right side, as Officer Blanding testified, or his left side, the location of his colostomy bag. JA 500, 502. Officer Blanding testified that the gun was on defendant's left side, but agreed that no blood could be seen on the gun in the photograph produced at trial. JA 506-7. Defendant's theory was that if he was shot in his left side and the gun was located on his left side, there should have been blood on the firearm as a result of the gunshot wound. However, the record is silent as to what evidence, if any, the shirt would reveal on those issues. Other evidence showed that the shotgun shell used to shoot defendant contained approximately nine pellets. JA 459. The defendant's hospital records showed one pellet wound on the left side, with the remainder being in the center and right side of defendant's abdomen. JA 580. Therefore, defendant has not shown that the shirt would have supported his theories.

The district court also noted that defense counsel had the opportunity to inspect the shirt during trial, but decided not to use it, that the shirt was made available to defense counsel in sufficient time to obtain an analysis of the shirt by a forensic expert, and that defense counsel made no request for a continuance for that purpose. JA 1075-80. In light of defendant's failure to request a continuance to obtain an expert examination of the shirt, no prejudice has been shown. See O'Hara v. Brigano, 499 F.3d 492, 503 (6th Cir. 2007)(noting defendant's failure to request a continuance to prepare a defense or subpoena supporting evidence); United States v. Holloway, 740 F.2d 1373, 1381 (6th Cir.

23

1984)(declining to find prejudice in light of defense counsel's failure to request a continuance).

### C.

The third alleged violation is the failure to disclose prior to trial that the description "pre-recorded" funds was false.  This fact was revealed at trial through the cross-examination of Officer Eastman.  No Rule 16 violation occurred, because the government was not required under Rule 16 to disclose the anticipated statements of witnesses prior to trial.  See Fed.R.Crim.P. 16(a)(2)(Rule 16 does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."); 18 U.S.C. §3500(a) (no statement made by a government witness other than the defendant shall be subject to discovery or inspection "until said witness has testified on direct examination in the trial of the case.").

Likewise, pretrial disclosure of exculpatory or impeachment evidence is not necessarily required under Brady.  "As a general proposition, '[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one....'" United States v. Mullins, 22 F.3d 1365, 1371 (6th Cir. 1994)(quoting Weatherford v. Bursey, 429 U.S. 545, 559 (1977)).  "Where a defendant claims a violation of Brady because of the Government's failure to produce impeachment evidence, 'so long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial, we fail to see how the Constitution is violated.'"  United States v. Crayton, 357 F.3d 560, 569 (6th Cir. 2004)(quoting United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988)).

24

Defense counsel thoroughly cross-examined Officer Eastman concerning his erroneous statement in the warrant affidavit that the funds used were pre-recorded. JA 257-263. Defense counsel noted the false statement during closing argument. JA 1013-14. Thus, defendant was able to make use of any impeachment value to be had from that evidence. Likewise, the disclosure of this evidence during trial did not prejudice defendant's position regarding his motion to the suppress the search. As noted previously, the district court correctly determined that the fact that pre-recorded funds were not used was not material to the issuance of the search warrant. Defendant has not shown that he was prejudiced by the disclosure of the false statement in the affidavit during trial.

## VI.

Defendant argues that he was denied a fair trial due to prosecutorial misconduct. We review the question of whether prosecutorial misconduct requires reversal de novo. Stover, 474 F.3d at 914. This court's review of a prosecutorial misconduct claim involves a two-step analysis: (1) were the prosecutor's remarks improper; and (2) were the remarks sufficiently flagrant to warrant reversal. United States v. Jamieson, 427 F.3d 394, 413 (6th Cir. 2005). In determining whether the conduct was "flagrant," we consider four factors: (1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused. Blood, 435 F.3d at 628. "In examining prosecutorial misconduct, it is necessary to view the conduct at issue within the context of the trial as a whole."

25

United States v. Beverly, 369 F.3d 516, 543 (6th Cir. 2004).

Defendant first argues that counsel for the government acted improperly in identifying the confidential informant and co-defendant Hoyle as witnesses.

Prior to opening statements, the government stated that, contrary to its earlier representations, it would be calling the confidential informant as a witness. JA 598-99. Defense counsel objected about the lack of time to prepare, and the court ordered the government to provide defense counsel with the informant's files. The court also indicated that it probably would not permit the informant to testify due to the delay in identifying the informant as a witness. JA 602. The government subsequently decided not to turn over the files, and did not call the informant as a witness. JA 599.

The gist of defendant's argument is that the government's decision to call the informant as a witness deprived his counsel of the opportunity to comment during opening statements that the government "supposedly has a key witness that can point the finger at" the defendant, but that "the government's afraid to call that witness." JA 600-01. However, the government's subsequent decision not to call the informant as a witness did not constitute misconduct. Further, during closing argument, defense counsel was able to comment on the fact that the government had not called the confidential informant as a witness, stating, "They have no confidential informant that they could bring in and say Mr. Robinson sold me drugs." JA 1023. Therefore, defendant can show no prejudice from the prosecutor's actions.

The defendant also contends that the prosecutor engaged in

26

misconduct when he included Hoyle on his list of potential witnesses read to the prospective jurors during voir dire, see JA 351, but did not call her as a witness during trial. Defendant contends that the government included Hoyle on its witness list to make its case look stronger and to intimidate defendant into pleading guilty. The record does not support this contention. Defense counsel argued before the district court that they knew from speaking with Hoyle's attorney that she had no intention of pleading guilty. JA 1072-73. However, the district court responded that if Hoyle was considering cooperating with the government, her attorney would not be likely to reveal that information to defendant's counsel. JA 1073. The court further observed that Hoyle was still engaged in plea negotiations with the government at that time, and that there was always a chance that Hoyle would change her mind and decide to cooperate. JA 1072-74.

Defendant cites no authority for the proposition that the prosecution is obliged to call each and every potential witness identified during voir dire, and the government did not engage in misconduct by including Hoyle's name in the list of potential witnesses read to the jury. As the district court commented, if the government had failed to identify Hoyle as a witness and she later decided to testify, defense counsel would have objected to the government's failure to give the prospective jurors the opportunity to say that they knew Hoyle. JA 1074. In addition, defense counsel commented during closing argument concerning the government's failure to call any co-defendants as witnesses, stating, "They have no co-defendants, cooperators, who's [sic] are going to come in and say Mr. Robinson was a part of the criminal

27

conspiracy and he's guilty." JA 1023. Defendant has shown no prejudice from the inclusion of Hoyle's name in the government's list of potential witnesses.

Defendant also argues that the prosecutor engaged in misconduct when he asked defense counsel in front of the jury whether counsel was willing to stipulate to defendant's medical records, knowing that defense counsel had previously objected to the release of the medical records on the grounds of physician-patient privilege. JA 575-580; 666. Defense counsel responded that they were not going to stipulate to the admission of the records. JA 666. The district court noted that the prosecutor should not have assumed that there might be a stipulation, but rejected defendant's argument that the prosecutor acted with ill will or that he had requested the stipulation hoping to create the impression that the defense was hiding the records. JA 795-97; 799; 801.

While it may have been more appropriate for the prosecutor to request a side bar conference to discuss the stipulation, his actions did not rise to the level of misconduct. The remark was isolated and, as the trial court noted, JA 797, it was not sufficient to raise an implication that the defense was trying to hide the records. Defendant declined the district court's offer for a curative instruction. JA 798-99. Finally, the evidence against defendant was strong.

We conclude that defendant was not denied a fair trial due to the actions of the prosecutor discussed above.

## VII.

Finally, defendant argues that he is entitled to a new trial

28

due to the alleged cumulative errors committed during trial. However, the accumulation of non-errors cannot collectively amount to a violation of due process. <u>Campbell v. United States</u>, 364 F.3d 727, 736 (6th Cir. 2004). Since we have found no error in the proceedings below, this argument is without merit.

VIII.

For the foregoing reasons, we affirm the defendant's convictions.