Michael Edward DORSEY, Petitioner–Appellee,

v.

Al C. PARKE, Warden, Northpoint Training Center, Respondent–Appellant.

No. 88–5792.

United States Court of Appeals, Sixth Circuit.

Argued April 2, 1989.

Decided April 10, 1989.

Phaedra Spradlin (argued), Hays & Hays, Winchester, Ky., for Michael E. Dorsey.

Michael L. Harned, Asst. Atty. Gen. (argued), Frankfort, Ky., for Al C. Parke.

Before MERRITT and MILBURN, Circuit Judges, and LIVELY, Senior Circuit Judge.

MERRITT, Circuit Judge.

This is an appeal from a District Court Order granting the writ of habeas corpus. The writ has been stayed pending appeal. The issue before us is whether petitioner Michael Edward Dorsey was denied his federal constitutional right to confront a key witness against him in his state trial for burglary. Because we conclude that Dorsey's constitutional right was not abrogated, we vacate the judgment below.

I.

Dorsey was convicted of second degree burglary by a jury verdict in the Jefferson Circuit Court of Kentucky. He then pled guilty to being a persistent felony offender, and was sentenced on the two convictions to a term of 12 years. Dorsey pursued his appeal, without success, in Kentucky's Court of Appeals and Supreme Court. He then filed a petition for habeas corpus relief in federal court.

Dorsey had been arrested, along with his cousin Gerald Campbell, in connection with the burglary of a home. Campbell became a key witness against Dorsey, and the impeachment of his testimony was crucial to Dorsey's defense. The District Judge held that Dorsey's convictions were obtained in violation of his Sixth Amendment right to confront witnesses against him because Dorsey's attorney was not allowed to impeach Campbell's credibility by showing emotional instability, low level of mental functioning, and intellectual malleability—in short, by showing that Campbell lacked the intellectual and emotional stamina to resist police pressures to testify to Dorsey's guilt. Error was founded (1) on the trial judge's limitation of cross-examination of Campbell and (2) on her ruling that records of Campbell's therapy in a mental health facility were inadmissible as privileged.

The record is replete with difficulties, not the least of which being its presentation as a videotape. First, the videotape is marginally audible at times, particularly when the trial judge and the attorneys whispered their sidebar conferences and whenever two or more participants spoke at once. Second, we are not equipped to produce efficiently the written transcription on which careful review must be founded. Finally, the parties did not have our transcription—indeed, they seemed not to have *any* transcription—rendering oral argument about the events of the trial an exercise in futility. Though we note that Kentucky's experiment in videotaping trials is receiving praise in the press, "Court Reporters on Way Out?: Courts Experiment with Audio–Video Machines," *ABA Jour-*

*nal* 28 (Feb. 1989), we wish to call attention to the acute difficulties this innovation presents to courts attempting to fulfill their function of judicial review.

Fortunately, we are able to discern enough of the proceedings at Dorsey's trial to rule on his constitutional claim. The trial judge imposed limits on defense's cross-examination of two witnesses, Campbell and his attorney Sarah Wiler, but, since the District Court's ruling does not reach the limits placed on cross-examination of Wiler, we need consider only the cross-examination of. Campbell.

Campbell was charged with the burglary but he was diverted to the youthful-offender program on the Commonwealth's condition that he testify against Dorsey. The burglary charges were eventually dismissed. Before the Dorsey trial Campbell was indicted on a second, unrelated robbery charge and was allowed to plead to a misdemeanor. All these facts except the guilty plea were elicited in testimony before the jury.

Dorsey's attorney then sought to show that Campbell's mental abilities were so shaky that he was particularly susceptible to police intimidation or suggestion. At this point the trial judge imposed limits on counsel's cross-examination of Campbell, prohibiting questions about Campbell's mental stability and particularly about a suicide attempt he made some time after promising to testify against Dorsey. Nevertheless, Dorsey's attorney was allowed to establish that Campbell had been treated at a mental health facility because of a suicide attempt made after he gave his statement implicating Dorsey to the police. The fact that this testimony came in despite the trial judge's earlier ruling that it would not be admitted moots any constitutional defect in that earlier ruling. The focus of defense counsel's cross-examination then shifted to medical records made by a mental health facility at which Campbell obtained treatment after his suicide attempt. The trial judge barred admission of these records on the grounds that they were privileged, and instructed Dorsey's attorney that she must limit further ques-

tioning about Campbell's mental stability to the circumstances in which he made his statement incriminating Dorsey. The defense did not bring any witness to testify to Campbell's mental ability, despite the trial judge's indication that she would admit such testimony.

Dorsey's attorney was allowed to cross-examine Campbell about the medical records on avowal. Campbell denied that the depression he suffered at that time resulted from his promise to testify against Dorsey; stated he did not remember telling, and then denied telling, the facility's personnel that he had memory problems; and denied that he had a history of drug overdoses. Once he understood what the term "manipulated" meant, he rejected the clinic's conclusion that he was easily manipulated by others. The District Court misunderstood the last of these exchanges, no doubt because of the awkwardness of reviewing a videotape transcript, to involve an endorsement and then a denial of the facility's clinical conclusion. Memorandum Opinion at 131.

We conclude that, though the proceedings below did not go smoothly and contained some inexplicable features, this record does not present us with any *constitutional* defect. We discuss the trial judge's rulings on the oral cross-examination of Campbell and on the medical records separately.

## II.

**A.** *Limits Placed on Cross–Examination of Campbell.* We have combed the record for any facts, other than those recorded in the mental health facility's records, which Dorsey's attorney knew or hoped she might elicit by cross-examining Campbell. Defense counsel never suggested that she knew any such facts or that she suspected facts which she hoped to elicit on cross. We must conclude that the strategy of the defense in the cross-examination of Campbell, besides asking him questions which were in fact permitted and confronting him with the medical records, was the general one of exposing Campbell's demeanor to the jury while asking him ques-

tions that suggested his emotional and intellectual susceptibility to police pressure.

This case thus presents a narrow, and we believe novel, question: does the Sixth Amendment guarantee to a criminal defendant the right to undermine the credibility of a government witness by cross-examination into a relevant subject that has already been broached on cross-examination of that witness, where the purpose of the questioning is not to establish additional facts but to expose the demeanor of the witness? We have found no case, and no case has been cited to us, that holds such cross-examination to be guaranteed to criminal defendants by the Sixth Amendment. Indeed, the law on the books today strongly suggests that the Sixth Amendment does not curtail the discretion of a trial judge in this narrow area.

In reviewing a trial court's decision to limit cross-examination, we will do well to recall Judge (now Justice) Kennedy's *caveat:* "The [confrontation] provision should not become the source of a vast and precise body of constitutional common law controlling the particulars of cross-examination." *Chipman v. Mercer,* 628 F.2d 528, 531 (9th Cir.1980). Our task is to apply established general principles to the facts of this case, not to craft ever more refined and particularized rules.

A "primary interest" secured to criminal defendants by the Sixth Amendment's confrontation clause is the right to cross-examine hostile witnesses. *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). This right has been held to apply to state as well as federal criminal proceedings. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The importance of this guarantee to the truth-seeking process of the criminal trial is undeniable. But the Sixth Amendment has not been construed to give criminal defendants absolute control over cross-examination. Rather, courts have striven to distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion. *Davis v. Alaska,* 415 U.S. 308, 316,

94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973); *United States v. Atwell,* 766 F.2d 416, 419–20 (10th Cir.), *cert. denied,* 474 U.S. 921, 106 S.Ct. 251, 88 L.Ed.2d 259 (1985). Beyond certain "essentials of cross-examination," *Chipman v. Mercer,* 628 F.2d at 531, the right to cross-examine is subject to limits imposed by the trial court in the exercise of its discretion. *United States v. Atisha,* 804 F.2d 920, 929 (6th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); *Stevens v. Bordenkircher,* 746 F.2d 342, 346 (6th Cir.1984); *Chipman v. Mercer,* 628 F.2d at 530. *See also United States v. Garrett,* 542 F.2d 23, 25 (6th Cir.1976). Moreover, even when the core values of the Sixth Amendment are invaded by a denial of cross-examination, the confrontation right may be displaced by "competing interests [which], if 'closely examined,' may warrant dispensing with confrontation at trial." *Ohio v. Roberts,* 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980) (quoting *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895)). On both sides of this line, the standard of review is abuse of discretion, abuse being found where the trial court has interfered with the defendant's constitutional right. *U.S. v. Carter,* 760 F.2d 1568, 1581 (11th Cir.1985); *U.S. v. Burke,* 738 F.2d 1225, 1227 (11th Cir.1984).

■ Where the trial court has curtailed a defendant's cross-examination of a "star" government witness—as it has done in this case—its ruling must be more carefully scrutinized. *United States v. Summers,* 598 F.2d 450, 460 (5th Cir.1979); *United States v. Brown,* 546 F.2d 166, 170 (5th Cir.1977). Nevertheless, we see no authority for finding a constitutional violation where cross-examination of a key government witness was only partially limited and where the questioning that was barred was not aimed at eliciting any additional facts.

■ It has repeatedly been held that a trial court abuses its discretion when it completely bars exploration of a relevant subject on cross-examination. *Alford v.*

*United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931); *United States v. Atwell,* 766 F.2d at 419. This rule applies not only to cross-examination into the substantive facts in controversy but also to cross-examination into the government witness's credibility. *United States v. Brown,* 546 F.2d at 169. We do not find, however, that Dorsey was barred from asking *all* questions about Campbell's mental stability. The trial judge specifically allowed questions about Campbell's experiences on the night he made his statement to the police, about his nervousness, and about the fact that Campbell sought mental health treatment after a suicide attempt. Rather, cross-examination of Campbell on this subject was permitted in part and barred in part. Where it is merely the *extent* of cross-examination that is limited, the trial judge retains a much wider latitude of discretion, though of course that discretion may be abused. *Alford v. United States,* 282 U.S. at 694, 51 S.Ct. at 220; *United States v. Atwell,* 766 F.2d at 416.

This Court has recognized that the test in such circumstances is whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory. *Stevens v. Bordenkircher,* 746 F.2d at 347. "[O]nce cross-examination reveals sufficient information to appraise the witnesses' veracity, confrontation demands are satisfied." *United States v. Falsia,* 724 F.2d 1339, 1343 (9th Cir.1983). The key word here is "information." The Supreme Court has required us to exercise heightened solicitude when the defense is barred from adducing *"facts* from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska,* 415 U.S. at 318, 94 S.Ct. at 1111 (emphasis added). Accordingly, this Court has recognized that the bounds of the trial court's discretion are exceeded when the defense is not allowed to "plac[e] before the jury *facts* from which bias, prejudice or lack of credibility of a prosecution witness might be inferred[.]" *United States v. Garrett,* 542 F.2d at 25 (emphasis added).

This well-settled principle protects the defendant's right on cross-examination to develop facts which might undermine a government witness's credibility. Indeed, the defense is not required to be able to state beforehand exactly what facts it wishes to elicit:

> Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory.... To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.

*Alford v. United States,* 282 U.S. at 692, 51 S.Ct. at 219. *See also United States v. Garrett,* 542 F.2d at 26. But *Davis, Alford,* and *Garrett* involve trial court rulings that barred defense counsel from adding to the fund of concrete information— whether known or to be discovered—with which the jury could assess a government witness's credibility. We decline to extend the constitutional guarantee beyond the scope of these rulings, to encompass questioning that will do nothing more than expose the demeanor of a government witness, already on the stand, while he or she is subjected to questions that probe his credibility.

This is not to say that displaying a witness's behavioral reactions to hostile questioning is not a key function of cross-examination. It is. IIIA *Wigmore on Evidence* § 946, at 783 (Chadbourne rev. 1970). As the Supreme Court has observed, "the principal purpose of cross-examination" is "to challenge 'whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed.'" *Ohio v. Roberts,* 448 U.S. at 71, 100 S.Ct. at 2541 (quoting Davenport, The Confrontation Clause and the Co–Conspirator Exception in Criminal Prosecutions: A Functional Analysis, 85

Harv. L. Rev. 1378 (1972)). Cross-examination as contemplated by the Sixth Amendment gives the defendant the opportunity "of compelling [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States,* 156 U.S. at 242–43, 15 S.Ct. at 339–40. But in cases testing the relationship between the Sixth Amendment and various exceptions to the hearsay rule, this important advantage of exposing demeanor under cross-examination has been sacrificed when the pressures of "public policy and the necessities of the case" become strong enough. *Id.* at 243, 15 S.Ct. at 340. The opportunity to expose the demeanor of a declarant has been foreclosed by admission of hearsay where the testimony admitted was obtained under oath, subject to cross-examination, from a declarant now unavailable. *Id.* at 240–44, 15 S.Ct. at 338–40. The Eighth Circuit has held that, under those circumstances, the opportunity to cross-examine the absent witness when the proposed testimony was first recorded is "indispensable," whereas the opportunity to display that witness's demeanor is "an incidental advantage which must sometimes give way to considerations of public policy and the necessities of the case." *Phillips v. Wyrick,* 558 F.2d 489, 495 (8th Cir.1977).

In the case before us, Dorsey had the opportunity to confront Campbell, in the presence of the jury, and to question his accuser under oath. Indeed, Campbell was compelled to answer questions directly pertinent to the attack on his credibility which Dorsey was mounting, and the jury was able to behold Campbell's demeanor during that cross-examination. We recall, finally, that the record suggests no facts or information (aside from the medical records, which constitute a separate problem) which continued questioning would have or might have exposed. Under these circumstances, we think that the trial judge's ruling barring further questions designed to undermine Campbell's credibility did not rise to the level of a violation of Dorsey's confrontation right.

■ **B.** *Campbell's Medical Records.* The trial judge ruled that records of Campbell's treatment at a mental health facility were inadmissible as privileged. We must express our puzzlement that she so held without asking Campbell whether he wished to assert the privilege, and that she then allowed their substance to be entered into the public record by permitting unlimited cross-examination upon them on avowal. And yet we note that these records, even if they were improperly excluded on grounds of privilege, were hearsay subject to no readily apparent exception to the hearsay rule.

We are therefore faced with a constitutional challenge to the exclusion of evidence under a state's law of privilege where it appears that the state rule was improperly applied but where the evidence would be routinely excluded under another provision of the state's law of evidence. As we stated in another habeas case, "[m]isapplication of State law, absent invidious discrimination, does not necessarily present a federal constitutional question." *Combs v. State of Tennessee,* 530 F.2d 695, 698 (6th Cir.), *cert. denied,* 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976). But here, even if the privilege issue was mishandled by the trial court, the evidence was not normally admissible anyway, by operation of a basic state rule of evidence.

As the Supreme Court observed in *Ohio v. Roberts,* the Sixth Amendment right of confrontation, read literally, will occasionally run afoul of evidentiary rules much older than the amendment itself. Faced with such a conflict, courts are to weigh the competing interests at stake, recognizing that "every jurisdiction has a strong interest ... in the development and precise formulation of the rules of evidence[.]" *Ohio v. Roberts,* 448 U.S. at 64, 100 S.Ct. at 2538. The duty of the court in enforcing the Sixth Amendment is to assure that a defendant has the opportunity to produce "all relevant *and admissible* evidence[.]" *United States v. Nixon,* 418 U.S. 683, 711, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039 (1974); *United States v. Kasto,* 584 F.2d 268, 272 (8th Cir.1978), *cert. denied,* 440 U.S. 930,

99 S.Ct. 1267, 59 L.Ed.2d 486 (1979). Where, as here, a defendant was barred, by what appears to be an erroneous ruling on one evidentiary ground, from introducing evidence that would be routinely excluded by the application of another sound evidentiary rule, we decline to find a constitutional violation.

### III.

In conclusion, we hold that Dorsey's constitutional right to confront witnesses against him was violated neither by the trial judge's ruling limiting cross-examination into Campbell's credibility nor by her exclusion of Campbell's medical records. Accordingly, the judgment of the District Court is vacated.