NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0230n.06

No. 09-5141

FILED

*Apr 27, 2011*

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,     )
    )
    Plaintiff-Appellee,     )
    )   ON APPEAL FROM THE UNITED
v.     )   STATES DISTRICT COURT FOR THE
    )   WESTERN DISTRICT OF TENNESSEE
DEANDRE YOUNG,     )
    )
    Defendant-Appellant.     )   OPINION
    )

**Before: BOGGS and COOK, Circuit Judges; and CARR, District Judge.** *

**JAMES G. CARR, Senior District Judge.** Defendant-Appellant Deandre Young appeals

his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He

appeals on two grounds: 1) the proof submitted at trial was insufficient to establish guilt beyond a

reasonable doubt; and 2) the district court improperly curtailed cross-examination of a key

government witness and concurrently accused defense counsel before the jury of deceptive trial

conduct, depriving Young of his right to a fair trial.

For the reasons that follow, we **AFFIRM** the district court's judgment.

**BACKGROUND**

In February, 2008, Bartlett Police Department Detective Patrick Cici went to an apartment

complex looking for Young to arrest him on outstanding warrants. Cici saw Young engage in what

---

* The Honorable James G. Carr, Senior United States District Judge for the Northern District
of Ohio, sitting by designation.

Cici believed to be a hand-to-hand drug transaction. Young then appeared either to place or retrieve something in a maroon car. Cici called for backup.

When Young got into the car and turned on the headlights, as if to drive away, officers approached the car and ordered Young to get out. Young initially complied, but then ran away and eluded the pursuing officers. Police searched the car, finding in the center console a bag of marijuana and a .38 caliber revolver.

After Young fled, he paged Sandra Wooten, whom he had been dating. When she picked him up on a street corner, he told her that he had escaped from the police. Wooten brought Young to her house.

The next day, officers came looking for Young. Though Wooten told them Young was not there, she indicated with gestures that he indeed was present. She led officers to an entrance to her attic, where Young was hiding. Young fled out of a window but was apprehended nearby.

Wooten testified she had rented the maroon car for Young. She had rented cars for him several times. Another government witness, Tanisha Turner, testified that she had also dated Young and rented cars for him. Young had directed her to the same rental agency where Wooten rented the maroon car in which officers found the gun.

The firearm was registered to Wooten. She had reported it stolen months earlier, telling police it had disappeared from a closet in her home. After Young's arrest, however, she told police that she had given Young the gun. In response to her demands that he return the gun to her, Young claimed it had been stolen from him. Wooten thereafter notified the police that the gun had been stolen from her home.

Wooten testified that, while Young was in custody following his arrest, he asked her to tell the police that she had put the gun in the car. Young told her that because it was her gun she would not get in trouble and he would not be charged. Young also told her Cici had planted the marijuana in the car.

Young testified that on the day the gun was found, he had picked up the rental car from Wooten at her work, and that the gun belonged to her.

After Young's arrest, Wooten, at Cici's request, provided a statement. Though not admitted at trial, the statement is part of the appellate record.[1]

At trial, Young's attorney, as part of a sequence of questions challenging Wooten's credibility, asked her about the statement:

---

[1] Wooten wrote:

I Sandra Wooten rented a marcoon (sic) malaiu (sic) from EZ Auto Sales & rental at 9:30 to 10:30 am, Young was in my truck while I rented the car and when I got back I gave the car to him and we went our seperated (sic) ways, he also gave me the $235 dollars to rent the car, and I also went the (sic) work that night. I only road (sic) to the store with him, [b]ut after that I never drove the car. I did not put any of my property in the car. I never put no (sic) drugs in the car or any thing I own in the car I had no money in the car. On 9-27-07 I did report my gun stole (sic) (we are taking (sic) about a taurus .38 calie (sic) special revolver), but I was in the apt. that night (Simor (sic) Lak (sic) apts) it was late and I gave him the gun that night and I ask (sic) for it back several time and he told me it was stolen. I continue to ask so I decided to call the police and reported it stolen, so I didn't tell the police the truth about the gun because I didnt (sic) want him to hurt me for getting him in trouble with the police. I did not put that gun in the car (the rented malibu) the last time I saw that gun is when I gave it to him in Simore (sic) lake apts in the (sic) early September.

I Sandra Wooten was affaid (sic) when the police ask me was DeAndre in my house at first I, said no, then the next few seconds I said yes because I was affaid (sic) of the safety of me and my kids, [a]nd I new (sic) hes (sic) a convected (sic) feleony (sic) and I wounld (sic) not have let the police left (sic) the house without telling the truth.

3

Q:     You don't want to tell a fib, but you have told several fibs throughout this case, isn't that right?

A:     I told a fib about the gun.

Q:     Just one?

A:     I told—I told a fib about the gun, how I—how the gun got missing because I didn't want to get him in trouble at that particular time.

Q:     But isn't it also true that you told the police that you had given a convicted felon a firearm that you would have been in trouble?

A:     I didn't know he was a convicted felon.

Q:     Oh, you didn't?

A:     When we first met, I didn't discuss no criminal background.

Q:     I'm sorry.  Do you remember providing a statement to Detective Cici on February the 26th, 2008?

A:     I sure do.

Q:     do you remember putting in there I knew he was a convicted felon and I would not have let the police --

A:     That's if I had known.  I miswritten (sic) it, if --

Ms. Webber:  Objection

The Court:     Objection sustained. Let me see counsel at sidebar.

**(The following proceedings had a side-bar bench.)**

The Court:     You will have to stop when there's an objection, you can't keep going. Let me see the document.

Ms. Webber:  In order for a prior statement to be admissible, it has to be inconsistent. She said when I first met him, I didn't not know he was a felon. This is when he got arrested at her home in February, I believe, the 19th or 20th of 2008, so that's not

4

inconsistent with I didn't know he was a felon when I filed the report back in September.

The Court: It's clearing (sic) she is saying if I knew he was a convicted felon, I would not have let the police—the grammar is not good—leave the house without telling the truth.

Mr. Alden: Well, I wasn't attempting to admit the statement, I was just asking –

Ms. Webber: That's not –

The Court: Excuse me.

Mr. Alden: Sorry, Your Honor.

The Court: It's a deceptive use of the statement. I will tell the jury it was an improper use of the statement, and I will read to them the portion of the statement correct and the language. It was inappropriate to do that. You cannot engage in that practice. Objection sustained.

**(The following proceedings were held in open court.)**

The Court: Sustain the objection. It was a deceptive use of the statement by the witness. The witness said—and I'm going to change the grammar just a little to clear up the meaning of the document—well, I tell you what, I will just have the witness read this statement, the portion about where you indicated had you known he was a convicted felon.

The Witness: Okay, I put, and I knew he—and I knew he's a convicted felon, and I would not have let the police left the house without telling the truth. That mean I meant if I had known he was a convicted felon, I wasn't going to let the police leave the house without telling them the truth. That's what I meant.

The Court: All right. The statement is clear from its context. I think that correct (sic) the issue. If you will hand that back to me. All right. Counsel, you may proceed.

By Mr. Alden

Q: You know what it means to be a convicted felon, don't you? I mean you have someone in your family that's a convicted felon, is that right?

5

A: I have a brother, but I'm not close to him. That's my father's side. Me and my brother on my mother's side never been in trouble with the law, so I'm just not familiar with all convicted felons and stuff, I'm not. So I have never been in trouble, so I don't know.

Q: What about a husband?

A: Yes, my husband is in jail, yes, he is.

Young now appeals, claiming the district judge impermissibly curtailed his examination of Wooten about the alleged inconsistency between her statement to Cici and trial testimony *vis-a-vis* her knowledge of Young's status as a convicted felon. Young also claims that the Judge manifested bias toward his attorney, and impugned him with the term "deceptive" during and following the colloquy at the bench. We find no error, and certainly, in any event, no error meriting reversal and a new trial.

## Discussion

## I. Right to a Fair Trial

## A. Limitation on Cross-Examination

The Sixth Amendment confers the right to confront witnesses, including the right to test their credibility through cross-examination. *See, e.g., Davis v. Alaska,* 415 U.S. 308, 315-16 (1974). In response to Young's claim that the district judge improperly curtailed cross-examination of Wooten, the government contends that cross-examination was not meaningfully limited. We review for abuse of discretion. *U.S. v. Howard*, 621 F.3d 433, 456 (6th Cir. 2010).

We evaluate a restriction on cross-examination by determining whether the jury, despite limits on cross-examination, had enough information to assess the defense theory. *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989). If the trial court improperly limited cross-examination, "[t]he

correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

Wooten was a key witness whose direct testimony provided essential elements of the government's case. Young's attorney attacked her credibility by asking about "fibs" she had told. Wooten acknowledged she had lied to the police when she reported the gun stolen from her home.

After Wooten stated, "I didn't know he was a convicted felon," Young's attorney sought to ask her about the apparent inconsistency between that assertion and a portion of her written statement. In full, that segment is:

> I Sandra Wooten was affaid (sic) when the police ask me was DeAndre in my house at first I, said no, then the next few seconds I said yes because I was affaid (sic) of the safety of me and my kids, [a]nd I new (sic) hes (sic) a convected (sic) feleony (sic) and I wounld (sic) not have let the police left (sic) the house without telling the truth.

Asserting a lack of inconsistency between the testimony and prior writing, the government objected. At sidebar, the district court stated it was sustaining the objection, and it so informed the jury.

Despite this ruling, the court permitted Wooten to read the statement and offer her explanation of its meaning. What thus transpired was, to a considerable extent, what would have happened had the prosecutor not objected or the court overruled the objection. The jury had, in full, the prior statement, which it could compare to her testimony. It also had her explanation, which it could assess in evaluating her credibility.

7

Defense counsel also attacked Wooten's credibility by questioning her about the extent of her relationship with Young and about her failure to inform the police that she had lied about the theft of the gun.

At most, the trial judge diverted the course of cross-examination. The detour was brief, and counsel soon got back underway. He lost nothing as a result of how the judge handled the prosecutor's objection: the jury heard Wooten disclaim knowledge of Young's status as a felon and then heard what she had earlier written. It could thereby fully assess the putative inconsistency.

No Sixth Amendment violation occurred.

### B. Prejudicial Comments by the District Court

Young next contends that the trial judge tainted the proceedings by disparaging and chastising defense counsel before the jury. This happened, Young claims, when the judge twice used the term "deceptive" in reference to counsel's handling of Wooten's written statement.

The Sixth Circuit generally reviews a district court's conduct during trial for abuse of discretion. However, where, as here, the defendant does not contemporaneously object to the trial court's conduct, the court uses a plain-error standard. *E.g., United States v. Hynes*, 467 F.3d 951, 958 (6th Cir. 2006). To establish plain error, Young must show: 1) an error; 2) that is plain; 3) that substantially affects his rights; and 4) that substantially affects the fairness and integrity of the proceedings. Fed. R. Civ. P. 52(b); *United States v. Rose*, 522 F.3d 710, 714 (6th Cir. 2008). Hostile comments of the district court may rise to the level of reversible error. *See, e.g., United States v. Segines*, 17 F.3d 847, 852-53 (6th Cir. 1994) (collecting cases).

At issue are statements made by the district court at sidebar and in open court. At sidebar the trial judge said:

It's a deceptive use of the statement. I will tell the jury it was an improper use of the statement, and I will read to them the portion of the statement correct (sic) and the language. It was inappropriate to do that. You cannot engage in that practice. Objection sustained.

In open court the trial judge stated:

Sustain the objection. It was a deceptive use of the statement by the witness. The witness said—and I'm going to change the grammar just a little to clear up the meaning of the document—well, I'll tell you what, I will just have the witness read this statement, the portion about where you indicated had you known he was a convicted felon.

A preliminary issue is whether the statement made at sidebar was overheard by the jury. Young cites *United States v. Poindexter*, 942 F.2d 354, 360 (6th Cir. 1991), in which the Sixth Circuit held that "this court will assume that the [sidebar] conference is within the jury's hearing unless the record shows otherwise." The record here does not specifically indicate that the jury was unable to hear.[2]

Assuming the jury overheard the sidebar, the remarks do not rise to the level of plain error. As this court has recently noted, "a judge's misconduct at trial may be characterized as bias or prejudice only if it is so extreme as to display clear inability to render fair judgment, so extreme in other words that it displays a deep-seated favoritism or antagonism that would make fair judgment

---

[2] The trial judge's statement during the sidebar that he "will tell the jury it was an improper use of the statement, and I will read to them the portion of the statement correct [sic] and the language" suggests that the jury was unable to hear the conversation. The same inference arises from the note that the proceedings then returned to "open court."

*Poindexter* has been questioned, and may not be good law. *United States v. Hayes*, No. 09-5390, 2010 WL 4244119 at *3 (6th Cir. Oct. 13, 2010) (unpublished disposition) (noting that an earlier—and therefore controlling—decision in this circuit seemed to reject the presumption that *Poindexter* adopts). That presumption assumes that this Circuit's trial judges are inattentive to the need to avoid having the jurors hear what they discuss at sidebar. We doubt that that is so: after all, the purpose of having counsel come to the bench is to keep the jurors from hearing the ensuing discussion.

9

impossible." *Lyell v. Renico,* 470 F.3d 1177, 1186 (6th Cir. 2006) (internal citations omitted). The

district court's comments were negative, but judicial remarks of disapproval ordinarily do not

support a claim of bias or partiality. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Even if the statements were improper, any error was harmless. *See United States v. Segines,*

17 F.3d 847, 851 (6th Cir. 1994) (stating that reversal for misconduct at trial will not be had where

the error is harmless). The trial judge avoided any prejudice by properly instructing the jury on the

irrelevance of anything he may have said that could be construed as expressing an opinion on any

issues in the case:

> Also you should not assume from anything I may have said or done that I have any
> opinion concerning any of the issues before you in this case. Except for my
> instructions to you, you should disregard anything I may have said in arriving at your
> own decision concerning the facts.

The jury is presumed to follow the trial court's instructions. *See, e.g., Hynes, supra*, 467 F.3d

at 957.

Young relies on *United States v. Hickman,* 592 F.2d 931 (6th Cir. 1979), for his contention

that the jury instructions were insufficient to offset the damage done by the statements. However,

*Hickman* is readily distinguishable.

In *Hickman*, the trial judge dominated a one-day trial with "constant interruptions," exhibited

a consistently anti-defense tone, interfered with defense cross-examination, and attacked the

credibility of defense witnesses. *Id.* at 934-936.

In this case the judge critiqued the use of a statement he considered to be consistent—once

at sidebar and briefly in open court. The district court's conduct was a far cry from the actions found

to be reversible error in *Hickman*. Especially in light of the express and emphatic instruction to

10

disregard anything he may have said, the judge's passing criticism simply would not have been likely to prejudice the defendant.

## II. Sufficiency of the Evidence

Young argues that the evidence presented by the government at trial was insufficient to find him guilty beyond a reasonable doubt of knowing possession of a firearm. Specifically, Young contends that the government failed to prove constructive possession of the firearm.

When a defendant challenges his conviction on the basis of insufficiency of the evidence, an appellate court will review all the evidence in the light most favorable to the government, giving the government the benefit of all inferences that could reasonably be drawn from the testimony. *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999); *United States v. M/G Transp. Servs., Inc.,* 173 F.3d 584, 589 (6th Cir. 1999). The court must determine whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt. *United States v. McAuliffe*, 490 F.3d 526, 536 (6th Cir. 2007).

Mere association with the property where the gun is located cannot support a finding of possession. *United States v. Bailey,* 553 F.3d 940, 945 n.3 (6th Cir. 2009). In *Bailey*, this court held that "the government must present some evidence to show some connection or nexus between the defendant and the firearm, which can be established by a showing that the defendant had knowledge and access." *Id.* at 948. This is constructive possession.

Here, constructive possession was established largely on the basis of Wooten's testimony. Her testimony established that Young knowingly possessed the gun because: 1) she gave the gun to him; 2) he did not return it; 3) she rented the vehicle for him; and 4) he had complete control over the car.

11

Because cross-examination of Wooten was improperly curtailed, Young argues, her testimony could not provide sufficiently reliable evidence for a conviction. Without Wooten's testimony, Young insists, the government could not conclusively prove that Young had knowledge of, access to, and the intent to exert control over the gun, and therefore the government could not establish constructive possession.

There being, as we have found, no violation of the right to cross-examine, there is no reason to disregard Wootens' testimony. That testimony sufficed to convict.

**Conclusion**

For the reasons stated above, we **AFFIRM** the district court's conviction.